IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MARY JONES o/b/o CHRISTOPHER JONES, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 11-227 |
|  | ) | Electronically Filed |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# MEMORANDUM OPINION

**I.      Introduction**

Plaintiff Mary Jones ("Mary") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her late husband's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings. ECF Nos. 7 & 9. After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire evidentiary record, the Court is convinced that the Commissioner's decision is "supported by substantial evidence" within the meaning of § 405(g). Therefore, the motion for summary judgment filed by Mary (*ECF No. 9*) will be denied, the motion for summary judgment filed by the Commissioner (*ECF No. 7*) will be granted, and the decision of the Commissioner will be affirmed.

1

## II.     Procedural History

Decedent Christopher Jones ("Jones") protectively applied for DIB and SSI benefits on November 15, 2005.  R. 10, 135.  The Pennsylvania Bureau of Disability Determination denied the applications on February 17, 2006.  R. 10, 70.  Jones apparently took no further action with respect to those applications.  R. 10.

Jones protectively filed the instant applications for DIB and SSI benefits on December 27, 2007, alleging disability as of May 27, 2005.  R. 101, 105, 181.  The applications were administratively denied on March 27, 2008.  R. 60, 65.  On May 9, 2008, Jones filed a timely request for an administrative hearing.  R. 10, 75-76.  Jones died on June 19, 2009, at the age of fifty-nine.  R. 130-131.

On August 17, 2009, a hearing was held before Administrative Law Judge James Bukes (the "ALJ").  R. 18.  Mary, who was represented by counsel, appeared and testified at the hearing.  R. 22-28.  Acknowledging that Jones had returned to work in August 2008, Mary's counsel argued in favor of a closed period of disability commencing on May 27, 2005, and ending on July 31, 2008.  R. 21-22.  Samuel Edelman ("Edelman"), an impartial vocational expert, provided testimony relating to the demands of Jones' prior jobs.  R. 29-30.

In a decision dated October 6, 2009, the ALJ determined that the doctrine of *res judicata* precluded further consideration as to whether Jones had been "disabled" on or before February 17, 2006.  R. 10, 13.  The ALJ further concluded that Jones had not been "disabled" between February 18, 2006, and July 31, 2008.  R. 17.  Mary filed a request for review with the Appeals Council on December 3, 2009, seeking administrative review of the ALJ's decision.  R. 4.  The Appeals Council denied the request for review on December 29, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 1.  Mary commenced this action

against the Commissioner on March 9, 2011, seeking judicial review of his decision.[1] ECF No. 3. The parties filed cross-motions for summary judgment on August 15, 2011. ECF Nos. 7 & 9. These motions are the subject of this memorandum opinion.

**III.     Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any

---
[1] Mary initially sought leave to proceed *in forma pauperis* on February 21, 2011. ECF No. 1. The Court denied her request on February 25, 2011. Mary's complaint was docketed on March 9, 2011, after she paid the requisite filing fee. ECF Nos. 2 & 3.

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant

qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. The ALJ's Decision

In his decision, the ALJ determined that Jones had not engaged in substantial gainful activity between February 18, 2006, and July 31, 2008. R. 13. Jones was found to be suffering from polymyositis, hypertension, atrial fibrillation, diastolic dysfunction and coronary artery disease (status post myocardial infarction), which were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c). R.

5

13. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that, during the period of time in question, Jones had been capable of performing a range of "sedentary"[2] work involving no extended reaching, no fine fingering and only occasional postural maneuvers. R. 14. Jones had "past relevant work"[3] experience as a human resources director, an employee relations representative and a sales representative. R. 17, 29. Edelman classified the human resources director job as a "skilled"[4] position at the "sedentary" level of exertion and the remaining two jobs as "semi-skilled"[5] positions at the "light"[6] level of exertion. R. 29. In response to a hypothetical question describing an individual with Jones' residual functional capacity, Edelman testified that such an individual could work as a human resources director. R.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

30. Therefore, the ALJ concluded that, between February 18, 2006, and July 31, 2008, Jones had been capable of returning to his past relevant work. R. 17.

V. **Discussion**

Mary does not take issue with the ALJ's determination that the doctrine of *res judicata* precluded her from arguing that Jones had been incapable of working on or before February 17, 2006. R. 10, 13; ECF No. 10 at 5-8. At the hearing, Mary testified that Jones had returned to work in August 2008. R. 21. Her counsel conceded that Jones' work activity during the final five months of 2008 had constituted substantial gainful activity. R. 21-22. Jones apparently continued to work until June 19, 2009, when he died of a brain hemorrhage. R. 22, 469-474. The Court's inquiry is limited to whether "substantial evidence" supports the ALJ's conclusion that Jones was capable of working as a human resources director between February 18, 2006, and July 31, 2008.

Sonia Clover ("Clover"), a nonexamining medical consultant, opined on February 10, 2006, that Jones was capable of performing a range of "light" work activities involving only a limited degree of handling and fingering. R. 444-450. Clover apparently rendered her opinion in connection with Jones' initial applications for DIB and SSI benefits. Those applications, of course, were administratively denied on February 17, 2006. R. 10, 70.

Dr. John R. Ward, a treating physician, recommended on October 3, 2007, that Jones undergo a cardiac stress test. R. 296. The test was conducted on November 7, 2007. R. 297-299, 408-410. After starting to walk on a treadmill, Jones was unable to complete the test because of fatigue, shortness of breath and muscle pain. R. 297-298, 302, 408-409, 416. The results of the test were inconclusive. R. 298, 409. On January 15, 2008, Jones told Dr. Laurie

7

W. Mathie, his treating rheumatologist, that his symptoms were attributable to "muscular fatigue" rather than to pain in his lower back.  R. 303.

Dr. Michael Vogini performed a consultative physical examination of Jones on March 13, 2008.  R. 416-421.  Prior to the examination, Jones complained of pain in his shoulders, hips and lower back.  R. 416, 422.  After completing the examination, Dr. Vogini reported that Jones could occasionally lift or carry objects weighing up to twenty pounds, stand or walk for three to four hours per day, and sit for up to eight hours per day.  R. 415.  Jones' pushing and pulling abilities were deemed to be unlimited.  R. 415.  Dr. Vogini further indicated that Jones was limited to only occasional bending, kneeling, stooping, crouching, balancing and climbing, and that his reaching and handling abilities were limited.  R. 417.  No environmental restrictions were noted.  R. 417.

On March 26, 2008, Dr. Dilip S. Kar suggested that Jones could perform an unlimited range of "light" work activities.  R. 424-430.  Dr. Kar rendered his opinion after reviewing the relevant documentary evidence, including Dr. Vogini's examination findings.  R. 429-430.  Dr. Ray M. Milke, a nonexamining psychological consultant, asserted on March 27, 2008, that Jones had no medically determinable mental impairment.  R. 431.

Jones started a new job in August 2008.  R. 21.  Edelman did not have sufficient information about that position to testify about its requirements.  R. 29.  Jones continued to work until his death on June 19, 2009.  R. 22.  The cause of his death was described as a "massive brain hemorrhage."  R. 471.  Nothing in the record suggests that this fatal event was triggered by Jones' work activity.

At the hearing, Mary described Jones as a motivated worker with an economics degree from the University of Pittsburgh.  R. 23.  She testified that he had not complained about the

"severe headaches" that had preceded his death. R. 25. Mary stated that Jones "wanted to work" and "never wanted to be labeled as being disabled." R. 28. She attributed Jones' decision to return to work in August 2008 to his "strong will." R. 28.

The ALJ's residual functional capacity assessment and corresponding hypothetical question to Edelman were based primarily on the examination findings reported by Dr. Vogini. R. 16, 30, 415, 417. Mary points to nothing in the record which contradicts those findings. Instead, she argues that Jones was entitled to "full credibility" in light of his work history, and that he "should be given the benefit of the doubt" under the present circumstances. ECF No. 10 at 5-7. In essence, Mary contends that Jones would not have sought Social Security disability benefits if he had been able to work, and that his subjective complaints of disabling pain should have been credited by the ALJ. *Id.* at 7-8. The Commissioner asserts that Jones' return to work in August 2008 was indicative of his ability to work during the preceding twenty-nine months. ECF No. 8 at 11-12.

The Commissioner's regulations recognize that symptoms such as pain and discomfort "are subjective and difficult to quantify." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For this reason, an administrative law judge must give "serious consideration" to a claimant's subjective complaints of disabling pain whenever there is objective evidence of a medical condition that could reasonably be expected to cause pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). A claimant's work history is an important factor bearing on his or her credibility. *Taybron v. Harris*, 667 F.2d 412, 415, n. 6 (3d Cir. 1981).

These general principles, however, do not impugn the ALJ's decision in this case. The treatment records relied upon by Mary do not include assessments detailing Jones' work-related abilities and limitations. The ALJ did not have the expertise to translate the treatment notes

9

supplied by Jones' treating physicians into a residual functional capacity assessment. *Rivera-Torres v. Secretary of Health & Human Services*, 837 F.2d 4, 6-7 (1st Cir. 1988). The burden was on Jones to produce evidence establishing his inability to engage in specific work-related activities. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). A claimant, after all, is uniquely suited to present evidence pertaining to his or her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987).

Where a claimant's medical records do not provide sufficient information to facilitate a determination as to whether he or she is "disabled" within the meaning of the Act, he or she may be asked to undergo a consultative medical examination. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Jones was examined by Dr. Vogini on March 13, 2008. R. 415-423. After completing the examination, Dr. Vogini completed a "medical source statement" detailing Jones' physical abilities and limitations. R. 415, 417. All of the limitations identified by Dr. Vogini were incorporated within the ALJ's residual functional capacity finding. R. 14. The ALJ's assessment was even more favorable to Jones than that provided by Dr. Vogini, who found Jones to be capable of performing a limited range of "light" work activities. R. 16, 415. By limiting Jones to a reduced range of "sedentary" work activities, the ALJ more than accounted for Dr. Vogini's examination findings. R. 16. Since the ALJ adequately accounted for Dr. Vogini's opinion, it follows *a fortiori* that he adequately accounted for the less restrictive assessments submitted by Clover and Dr. Kar. R. 424-430, 444-450.

Mary points to nothing in the record which contradicts Dr. Vogini's findings. Where conflicting opinion evidence is submitted, the Commissioner "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In this vein, Dr. Vogini's consultative assessment would have most

10

likely constituted "substantial evidence" of Jones' ability to work even if it had been contradicted by an assessment provided by a treating physician. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Given that Jones' treating physicians never rendered contrary opinions, Dr. Vogini's examination report provided the ALJ with an adequate basis for determining that Jones had been capable of working during the relevant period of time. The ALJ's determination is further supported by the fact that Jones' impairments did not prevent him from returning to work in August 2008. R. 16.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, the motion for summary judgment filed by Mary (*ECF No. 9*) will be denied, the motion for summary judgment filed by the Commissioner (*ECF No. 7*) will be granted, and the decision of the Commissioner will be affirmed. An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties